[No. A090302. First Dist., Div. One. June 18, 2001.]

JAMES A. PETRICKA, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## COUNSEL

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, David Chaney, Assistant Attorney General, Damon M. Connolly, Miguel A. Neri and Lyn Harlan, Deputy Attorneys General, for Defendant and Appellant.

Allan Gorelick and Thomas W. McDonnell for Plaintiff and Respondent.

## OPINION

**MARCHIANO, J.**—Respondent James A. Petricka was arrested for driving under the influence of alcohol (Veh. Code, § 23152). A chemical test of his blood revealed a blood-alcohol level of .15 percent. Appellant Department of Motor Vehicles (DMV) suspended Petricka's driver's license after an administrative hearing. Petricka sought judicial review of the suspension by a petition for writ of mandate, in which he argued that the DMV had failed to prove that his blood sample had been properly collected according to applicable law. The DMV argued that the presumption of Evidence Code section 664, that an "official duty has been regularly performed," combined with other evidence provided sufficient evidence that Petricka's blood was properly collected. The superior court rejected that argument and granted the writ. The DMV argues that the trial court erred. We agree and reverse because the evidence supports the conclusion that the officer carried out his official duty to comply with the applicable Vehicle Code sections which required him to obtain an accurate blood-alcohol result for evidentiary use at the hearing.

## I. FACTS

The facts are taken from the record of the administrative hearing.

On December 19, 1998, at 3:50 a.m., California Highway Patrol Officer Rauch saw Petricka speeding and driving on the right shoulder of the road. Rauch stopped Petricka and noticed that his speech was slurred, his gait was unsteady, and his eyes were watery and bloodshot. Petricka smelled of alcohol and failed a field sobriety test.

Just after 4:00 a.m., Officer Rauch arrested Petricka for driving under the influence of alcohol. Rauch also served Petricka with a DMV order of suspension of his driver's license pursuant to Vehicle Code section 13353.2. The suspension order was based on Rauch's reasonable belief that Petricka had been driving with a blood-alcohol level of .08 percent or higher, the statutory definition of intoxication.

Petricka submitted to a blood test; apparently blood was drawn at 4:50 a.m.[1] A toxicology laboratory conducted a chemical test of Petricka's blood and determined that his blood-alcohol level was .15 percent.

Pursuant to Vehicle Code section 13558, subdivision (a), Petricka requested an administrative hearing to review the order of license suspension. Such a hearing is limited to three issues: (1) whether the arresting officer had reasonable cause to believe the driver was driving under the influence of alcohol; (2) whether the driver was lawfully arrested; and (3) whether the driver had a blood-alcohol level of .08 percent or more. (Veh. Code, § 13558, subd. (c)(2); see § 13557, subd. (b)(2).) Petricka, through counsel, stipulated to the first two issues, and the hearing proceeded only on the third.

The DMV introduced four documents as exhibits. The two which concern us are exhibit 1, Rauch's sworn officer statement (form DS 367) setting forth the circumstances of the traffic stop and arrest, and exhibit 2, the lab report of the blood test results. The lab report, from the Institute of Forensic

---

[1] In its opening brief, the DMV claims "Officer Rauch and [Petricka] proceeded to Alta Bates-Herrick Hospital where ERT/EMT-I David Millbourne drew blood from [Petricka]." This fact is not properly before us. It is not a part of the administrative record. It comes from a document attached to a police report which was included in a request for judicial notice filed by the DMV in the superior court mandamus proceeding. The superior court did not grant the request for judicial notice. Indeed, it would have been improper for the court to take judicial notice of the police report and, a fortiori, its attachments. (See *People v. Jones* (1997) 15 Cal.4th 119, 171, fn. 17 [ 61 Cal.Rptr.2d 386, 931 P.2d 960], overruled on unrelated grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823 fn. 1 [72 Cal.Rptr.2d 656, 952 P.2d 673].) Accordingly, we strike the quoted sentence from the opening brief on our own motion. (Cal. Rules of Court, rules 15(a), 18.)

Sciences in Oakland, indicates that a sample of Petricka's blood was submitted by Officer Rauch and that a chemical test showed a .15 percent blood-alcohol level. Alcohol Analyst Catalina F. Sundita signed the report. Above Sundita's signature is a certification, under penalty of perjury, that Sundita performed the blood analysis in the regular course of her duties, that she is qualified to perform the analysis under title 17 of the California Code of Regulations (Title 17), and that her equipment was in proper working order at the time of the analysis.

Petricka's counsel objected to the lab report and to that portion of the officer statement which indicated that a blood test was performed. The basis of the objection was the failure of the DMV to show that the blood sample was taken by a person authorized to do so by Vehicle Code section 23158, and was taken with the proper procedures to guard against contamination in the manner prescribed by section 1219.1 of Title 17.

Vehicle Code section 23158, subdivision (a), provides that only certain listed medical, paramedic, or laboratory personnel may withdraw blood for the chemical testing of a suspected drunk driver. Section 1219 of Title 17 provides that "Samples taken for forensic alcohol analysis . . . shall be collected and handled in a manner approved by the [State] Department [of Health Services]. The identity and integrity of the samples shall be maintained through collection to analysis and reporting." Section 1219.1 provides for specific blood collection procedures, including the requirements that blood be taken "by venipuncture from living individuals" (subd. (a)); that alcohol not be used to clean the skin at the site of the venipuncture (subd. (c)); that no reusable equipment be cleaned with alcohol (subd. (d)); that the blood be mixed with an anticoagulant and a preservative (subd. (e)(2)); that the blood be placed in a clean, dry container closed by an inert stopper (subd. (e)); and that such a container must not have been cleaned with alcohol (subd. (e)(1)).

Counsel argued that by failing to introduce evidence of proper blood collection procedures, the DMV had failed to meet its burden of proof.[2] Counsel presented no evidence. Petricka was present at the hearing but did not testify.

---

[2]Counsel also objected because the information in the exhibits concerning the blood test was inadmissible hearsay which did not comply with the public records exception. (Evid. Code, § 1280.) But the hearsay issue was not presented in this appeal. While the body of Petricka's mandate petition briefly alleges that the DMV's documentary exhibits were "incompetent hearsay," the points and authorities in support of the petition do not offer any legal argument corresponding to the hearsay allegation. Petricka does not raise a hearsay argument in his respondent's answering brief. Indeed, he seems to concede that the documents are generally admissible under the public records exception to the hearsay rule, provided they satisfy certain requirements we need not discuss here. (See *Lake v. Reed* (1997) 16 Cal.4th

The hearing officer made detailed findings of fact regarding Petricka's arrest and objective signs of intoxication, and found that he was lawfully arrested based on reasonable cause. In finding of fact No. 5, the hearing officer found that Petricka "chose and completed the blood test. The test results were .15 percent blood alcohol." The hearing officer found that the DMV's prima facie case against Petricka "remains uncontroverted" because "[c]ounsel did not present evidence or testimony to rebut" the only contested issue, i.e., whether Petricka was driving with a blood-alcohol level of .08 percent or more. The hearing officer concluded that Petricka was in fact driving under the influence of alcohol, and issued an order upholding his license suspension.

Petricka challenged the suspension order by a petition for writ of mandate. The petition alleged that the DMV had failed to establish evidence that the blood sample was properly collected, handled and preserved by a qualified person, as required by law. Petricka argued that the presumption of Evidence Code section 664 did not establish that the proper procedures were followed, by a person with proper qualifications, when his blood was drawn.

The DMV countered that the Evidence Code presumption established that the blood was properly collected by a qualified person, and that it was incumbent upon Petricka to overcome the presumption. The DMV argued that Petricka had not succeeded in overcoming the presumption because he had introduced no evidence disputing the validity of the procedures used to collect his blood, and made no showing that they violated Title 17.

The trial court granted the mandate petition and directed the DMV to set aside the order suspending Petricka's license. The court ruled that the DMV hearing officer's finding of fact No. 5 was "unsupported by adequate evidence." The trial court apparently concluded that Petricka's objections to the officer statement and lab report were sufficient to overcome the Evidence Code presumption and require the DMV to introduce affirmative evidence of proper blood collection procedures. The premise of the trial court's ruling seems to be that, in the absence of such evidence, the DMV had failed to show a properly collected blood sample, guarded against contamination by a qualified person, and thus had failed to establish the reliability of the chemical test of Petricka's blood.

## II. DISCUSSION

The DMV contends that the blood collection procedures are presumed proper under Evidence Code section 664, and that it was incumbent

448, 467 [65 Cal.Rptr.2d 860, 940 P.2d 311] (*Lake*); *Shea v. Department of Motor Vehicles* (1998) 62 Cal.App.4th 1057, 1059 [72 Cal.Rptr.2d 896] (*Shea*); *Santos v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 546-547 [7 Cal.Rptr.2d 10] (*Santos*).)

upon Petricka to show the procedures were not properly performed. We agree for the following reasons.

■    We begin by noting the informal nature of an administrative DMV hearing, which does not require the full panoply of the Evidence Code provisions used in criminal and civil trials. Such hearings are governed by the Administrative Procedure Act. (Gov. Code, § 11501, subd. (b); Veh. Code, § 14112, subd. (a).) The DMV bears the burden of proof that a driver was operating a vehicle with a blood-alcohol level of .08 percent or higher. (*Santos, supra,* 5 Cal.App.4th at p. 549.) But where, as here, the driver submits to a blood test, that burden is typically satisfied by two documents: the sworn statement of the arresting officer and a forensic lab report documenting the results of a chemical test of the driver's blood. (See *Lake, supra,* 16 Cal.4th at p. 451.)

The forensic lab report need not be sworn, because of the "relaxation of evidentiary rules applicable in administrative hearings." (*Lake, supra,* 16 Cal.4th at p. 467.) Such a report, prepared by a properly licensed lab, "is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs" and is thus admissible under the Administrative Procedure Act. (Gov. Code, § 11513, subd. (c); see *Lake, supra,* 16 Cal.4th at p. 467.)

■    Evidence Code section 664, which presumes that an official duty has been regularly performed, has been widely applied to DMV administrative hearings. (See, e.g., *Baker v. Gourley* (2000) 81 Cal.App.4th 1167 [97 Cal.Rptr.2d 451] (*Baker*); *Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133 [7 Cal.Rptr.2d 818] (*Davenport*); *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809 [3 Cal.Rptr.2d 478] (*Imachi*).)

The general rule fashioned by these and other cases is that Evidence Code section 664, which affects the burden of proof, can satisfy the DMV's burden of proving that appropriate procedures have been properly performed. Once a prima facie case is made, the burden then shifts to the driver to show improper performance, either by cross-examination of the arresting officer or by the introduction of affirmative evidence. (*Davenport, supra,* 6 Cal.App.4th at pp. 143-144; *Imachi, supra,* 2 Cal.App.4th at pp. 816-817; see *Baker, supra,* 81 Cal.App.4th at pp. 1172-1173.) Such a showing cannot rest on speculation, but must demonstrate a reasonable basis for an inference that the procedures were not properly followed. (*Baker, supra,* 81 Cal.App.4th at p. 1174.)

Usually these cases involve the validity of the chemical test by disputing the qualifications of the testing personnel. (See, e.g., *Shea, supra,* 62

Cal.App.4th at pp. 1059-1061.) However, *Baker* involved the presumption in the context of the procedures for the proper handling of a blood sample, specifically the requirement of Title 17, section 1219.1 that the sample be deposited in a clean, dry container with an inert stopper. (*Baker, supra,* 81 Cal.App.4th at pp. 1173-1174.) Logically, the Evidence Code presumption would apply to the initial collection procedures, as well as subsequent handling and testing where there is an evidentiary basis for the presumption.

From the moment of arrest, the procedures for blood collection and testing are comprehensive and interrelated, and bristle with mandatory official duties. The arresting officer is mandated to carry out specific official duties to verify the level of intoxication. Vehicle Code section 13380 provides that whenever a peace officer arrests a person for driving under the influence of alcohol or serves a DMV order of suspension of that person's license, "the peace officer shall immediately forward to the [DMV] a sworn report of all information relevant to the enforcement action, including information that adequately identifies the person, a statement of the officer's grounds for belief that the person violated Section . . . 23152, . . . [and] *a report of the results of any chemical tests that were conducted on the person . . . .*" (Italics added.)

■ The chemical test for blood-alcohol level "shall be . . . administered at the direction of a peace officer" having reasonable cause to believe the arrested driver is under the influence of alcohol. (Veh. Code, § 23612, subd. (a)(1)(C).) This statutory language "imposes on an officer a duty 'to administer the test or have it administered by another.' " (*Yordamlis v. Zolin* (1992) 11 Cal.App.4th 655, 661 [14 Cal.Rptr.2d 225], quoting *Davenport, supra,* 6 Cal.App.4th at p. 142, fn. 4.) "In most cases it will be the arresting officer who will . . . either give the test or take the suspect to a facility where a test can be administered." (*Skinner v. Sillas* (1976) 58 Cal.App.3d 591, 599 [130 Cal.Rptr. 91].) If the test is administered by another, the officer is still under a duty to make certain that the testing procedures satisfy statutory and regulatory requirements.

The peace officer "shall immediately forward" a copy of the license suspension order along with "the report required by Section 13380" to the DMV. The peace officer must forward a blood sample "immediately to the appropriate forensic laboratory," which in turn must forward the results of the chemical tests to the DMV within 15 calendar days of the arrest. (Veh. Code, § 23612, subd. (g)(1).) ■ As noted above, Vehicle Code section 23158 and Title 17 provide explicit, mandatory requirements for the procedures of proper blood collection and the qualifications of the person drawing blood. The officer is mandated to provide legally valid test results pursuant

to those sections, which would include using medical personnel qualified to draw and preserve the blood sample and a forensic laboratory qualified to analyze and render a report of the test results. "Accordingly, faced with a report of chemical test results, the burden would be on the licensee to demonstrate that the test was not properly performed." (*Imachi, supra*, 2 Cal.App.4th at p. 817.)

In *Imachi* the court concluded that the DMV failed to establish its substantive prima facie case with adequate admissible evidence. "[T]he blood test results were put in evidence only through the hearsay statement of the officer." (*Imachi, supra*, 2 Cal.App.4th at p. 817.) The officer, however, did not perform the blood test and did not have personal knowledge of the test results. (*Id.* at p. 816.) The substantive fact that the driver had a blood-alcohol level of .08 percent or higher was not sufficiently established.

But in the present case the test results were put into evidence through the certified lab report of the alcohol analyst who personally performed the test. With the certified lab report and the sworn officer statement, the DMV satisfied the twin components of its prima facie case: that Petricka was operating a vehicle while his blood-alcohol level was .08 percent or higher. The foundational evidentiary fact that the blood was properly collected in accordance with Title 17 and Vehicle Code section 23158 is not a substantive component of the DMV's prima facie case. As such, that fact can be established by the Evidence Code presumption and is subject to rebuttal.

We conclude the presumption of Evidence Code section 664 applies and satisfied the DMV's initial burden of proof in this case. The officer in compliance with an official duty provided his sworn report on form DS 367 with the results of the test as required by Vehicle Code sections 13380 and 23612. The burden then shifted to Petricka to show that the officer did not carry out his official duties, including that proper procedures for blood collection were not followed. But Petricka presented no evidence that the blood collection procedures were not properly conducted. He argues, as he did in the mandate proceeding below, that the Evidence Code presumption should not apply because at the time of the administrative hearing he did not know the identity of the person who drew the blood and thus could not investigate whether proper procedures were followed. He further argues that his ignorance of the identity was the result of the DMV's improper refusal to disclose it.

■ We need not decide whether the Evidence Code presumption can *never* apply to a nameless and faceless individual. In the present case, Petricka was not precluded from learning the blood drawer's identity who

was readily identifiable. Despite their informality, DMV administrative hearings are not modern-day Star Chambers issuing edicts based on secret information. There are statutory procedures which would have provided Petricka with the name of the person drawing his blood.

"Upon the request of the person tested, full information concerning the test taken at the direction of the peace officer shall be made available to the person or the person's attorney." (Veh. Code, § 23158, subd. (c).) Upon such a request, the DMV would have been obligated to identify the blood drawer, and Petricka could then have invoked a statutory subpoena power to obtain his or her testimony at the administrative hearing. (Veh. Code, § 14104.5; see *Monaghan v. Department of Motor Vehicles* (1995) 35 Cal.App.4th 1621, 1625-1626 [42 Cal.Rptr.2d 167] (*Monaghan*).) If Petricka had requested a subpoena, had it served and paid the appropriate fee, he would have had an " 'absolute right' " to compel the attendance of the drawer of his blood. (*Monaghan, supra,* 35 Cal.App.4th at p. 1626, quoting *Burkhart v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 110 [177 Cal.Rptr. 175].) We note that the police report is also available from the arresting agency and usually contains information about where the blood was drawn.

Petricka did make a discovery demand on the DMV. In his letter to the DMV requesting an administrative hearing, counsel for Petricka wrote, "We hereby demand **discovery** under Government Code section 11507.6." But there is no evidence that, in the wake of the DMV's failure to disclose, counsel petitioned the superior court for discovery compliance under Government Code section 11507.7. Furthermore, counsel made no complaint about a lack of discovery at the administrative hearing, did not request a continuance (Gov. Code, § 11524), and did not ask that the hearing officer issue a subpoena (Veh. Code, § 14104.5, subd. (a)). It is incumbent upon the driver to take such steps as these to secure the attendance of desired witnesses. (See *Monaghan, supra,* 35 Cal.App.4th at p. 1626.)

■ The DMV was required to prove by a preponderance of the evidence the requirements of section 13557, subdivision (b)(2), including Petricka's having .08 percent or more, by weight, of alcohol in his blood. The arresting officer certified the blood was drawn at 4:50 a.m. on December 19, 1998 after an arrest at approximately 4:00 a.m. The certified lab result on December 21, 1998, reported .15 percent. The presumption embodied in Evidence Code section 664, in conjunction with the evidence, satisfied the DMV's prima facie case. Petricka did not rebut the presumption in any way. (Cf. *McKinney v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525 [7 Cal.Rptr.2d 18].) The hearing officer's finding of fact that Petricka drove with .08 percent blood-alcohol level or higher was supported by

substantial evidence. The trial court's contrary conclusion was not supported by substantial evidence, and we therefore reverse. (See *Lake, supra,* 16 Cal.4th at p. 457.)[3]

## III. DISPOSITION

The order granting the petition for writ of mandate is reversed. Each party shall bear its own costs on appeal.

Stein, Acting P. J., and Swager, J., concurred.

---

[3]In light of our disposition, we need not reach the second issue raised by the DMV on appeal.