Filed 5/30/13  Patel v. Shiomoto CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHIRAG B. PATEL,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEAN SHIOMOTO, as CHIEF DEPUTY DIRECTOR, etc.<br><br>    Defendant and Appellant. | A136228<br><br>(Alameda County<br>Super. Ct. No. RG12616999) |

On April 2, 2011, petitioner Chirag Patel, who was already on probation for reckless driving stemming from a prior drunk driving arrest, was again arrested for driving under the influence of alcohol.  He submitted to a blood test, which showed a blood-alcohol content (BAC) of 0.13 percent.  Following an administrative per se hearing, the Department of Motor Vehicles (DMV) suspended his driver's license.

Patel filed a petition for writ of mandate in the superior court to set aside the suspension.  The trial court found that the forensic alcohol report lacked trustworthiness and that there were chain of custody problems with Patel's blood sample such that its integrity was questionable.  It thus concluded that the DMV had failed to satisfy its burden of proof, and granted the petition.

The DMV appeals.  We conclude that the trial court's findings were unsupported by substantial evidence, and we reverse.

1

## FACTUAL BACKGROUND

According to the arrest report of Livermore Police Officer Sean Mariconi, on April 2, 2011 at 1:57 a.m., he was traveling eastbound on First Street in Livermore when he noticed a silver Scion traveling eastbound in the right lane. The car caught his attention because it was traveling below the posted speed limit. As he watched, the car drifted to the right, crossing over the white line into the bicycle lane. It then moved back into the traffic lane before again drifting to the right, traveling approximately 30 feet with both right tires in the bicycle lane. Officer Mariconi initiated a traffic stop, and the Scion driver pulled over.

Patel was driving the Scion, with Brandon Mailho in the passenger seat. Officer Mariconi asked Patel where he was coming from, and he responded that he had just gone downtown to pick up Mailho. The officer noticed that Patel's eyes were bloodshot and watery, and he detected an odor of alcohol on Patel's breath. He asked Patel if he had been drinking, and Patel denied that he had been. Mailho volunteered that it must have been coming from him because he was drunk.

Officer Mariconi had Patel exit the car for further evaluation. He asked Patel when he had last consumed alcohol, and Patel admitted he had had "2 beers" "about 2 or 3 hours ago." When asked he if had been drinking anything else, Patel responded, "2 Crown and Cokes."

Officer Mariconi had Patel perform a series of standardized field sobriety tests. During the tests, Officer Oto arrived to assist. Patel performed poorly on each test. Officer Mariconi also checked Patel for horizontal gaze nystagmus, which was present in both eyes. He then asked Patel to take a preliminary alcohol screening (PAS) test, which he took twice, registering a BAC of 0.129 and 0.116 percent, respectively.

In light of Officer Mariconi's observations of Patel, his performance on the field sobriety tests, and the PAS test results, the officer arrested him for drunk driving and confiscated his driver's license. Then, as described in Officer Mariconi's arrest report, "Officer Oto took custody of Patel and transported him to Santa Rita Jail. At the jail, Certified Phlebotomy Technician Adriana Hamm from VBS Services, drew two vials of

2

blood from Patel at 0250 hours. Technician Hamm turned the vials over to Officer Oto who later placed them into the toxicology safe for lab testing."

## ADMINISTRATIVE PER SE HEARING

### The Administrative Per Se Procedure

Patel's drunk driving arrest led to an administrative per se hearing, the background and procedure of which we had occasion to discuss in *Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1536-1538:

"When a driver is arrested for driving under the influence and is determined to have a prohibited blood-alcohol content (BAC), the arresting officer or the DMV serves the driver with a 'notice of [an] order of suspension or revocation' of his or her driver's license, advising that the suspension will become effective 30 days from the date of service. (Veh. Code, §§ 13353.2, subds. (b) & (c), 13353.3, subd. (a).) The notice explains the driver's right to an administrative hearing before the effective date of the suspension if the driver requests a hearing within 10 days of receipt of the notice. (*Id.*, §§ 13353.2, subd. (c), 13558, subd. (b).)

"After the driver is served with the notice, the DMV automatically reviews the merits of the suspension to determine whether the peace officer had reasonable cause to believe that the driver had been driving a motor vehicle under the influence of alcohol, the driver was placed under arrest, and the driver had a BAC of 0.08 percent or more at the time he or she was driving. (Veh. Code, §§ 13558, subd. (c)(2), 13557, subd. (b)(2).) This determination must be made prior to the effective date of the suspension, although the DMV may dispense with the automatic review if the driver requests a hearing. (*Id.*, § 13557, subds. (c), (e).)

"The administrative per se hearing is presided over by either the director of the DMV, a hearing board, or in the usual case . . . a hearing officer. (Veh. Code, § 14104.2, subd. (a) [" 'Any hearing shall be conducted by the director or by a hearing officer or hearing board appointed by him or her from officers or employees of the [DMV].' "]; [citations].) Hearing officers are typically DMV employees who need not have any legal training whatever. . . .

3

"The sole task of the hearing officer is to determine whether the arresting officer had reasonable cause to believe the person was driving [under the influence of alcohol], the driver was arrested, and the person was driving with a BAC of 0.08 percent or higher. If the hearing officer determines that the evidence establishes these three facts by a preponderance of the evidence, the license will be suspended. [Citations.]"

"The procedure is civil in nature and is independent from the criminal prosecution that might ultimately result in the imposition of penalties through the criminal justice system. [Fns. omitted.]"

**Burdens of Proof at the Administrative Per Se Hearing**

At the administrative per se hearing, the DMV bears the burden of proving by a preponderance of the evidence that (1) the peace officer had reasonable cause to believe the driver had been driving a motor vehicle while under the influence of alcohol; (2) the driver was placed under arrested; and (3) the driver had 0.08 percent or more, by weight, of alcohol in his or her blood. (*Lake v. Reed* (1997) 16 Cal.4th 448, 455-456; Veh. Code, § 13557, subd. (b)(1), § 13558, subd. (c)(1).)

Where, as here, the driver submits to a blood test, the DMV usually satisfies its burden by introducing two documents: the arresting officer's sworn statement on DMV form DS 367[1] and a forensic alcohol report documenting the results of a chemical test of the driver's blood. (*Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348 (*Petricka*).) Although the DS 367 statement and forensic report are hearsay, they are admissible under the public employee records exception to the hearsay rule, provided they meet the foundational requirements of Evidence Code section 1280,[2] which sets forth the exception. (*Lake v. Reed, supra,* 16 Cal.4th at p. 467; *Shea v. Department of Motor Vehicles* (1998) 62 Cal.App.4th 1057, 1059; *Furman v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 416, 421; *Imachi v. Department of Motor Vehicles*

---

[1] This statement is typically referred to as the officer's DS 367 statement, a designation we shall use here.

[2] All subsequent statutory references are to the Evidence Code, except where otherwise noted.

(1992) 2 Cal.App.4th 809, 815.)  Section 1280 requires that the "writing was made by and within the  scope of duty of a public employee," it was "made at or near the time of the act, condition, or event" recorded, and the "sources of information and method and time of preparation were such to indicate its trustworthiness."[3]

Significantly, once the section 1280 foundational requirements are met, section 664's presumption that official duties have been regularly performed attaches.  Under this rebuttable presumption, it is presumed " 'that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence.  [Citation.]' "  (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232-1233; see also *Morgenstern v. Department of Motor Vehicles* (2003) 111 Cal.App.4th 366, 373; *Shannon v. Gourley* (2002) 103 Cal.App.4th 60, 65; *Petricka, supra,* 89 Cal.App.4th at p. 1348.)

Once the DMV establishes its prima facie case, the burden shifts to the driver to produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV.  (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at pp. 1232-1233.)  " 'The licensee must show, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed . . . ." [Citation.]  Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation.' "  (*Id.* at p. 1233.)  The licensee's "showing cannot rest on speculation, but must demonstrate a reasonable basis for an inference that the procedures were not properly followed."  (*Petricka, supra,* 89 Cal.App.4th at p. 1348.)

---

[3] Section 1280 provides, in full:  "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies:  [¶] (a) The writing was made by and within the scope of duty of a public employee.  [¶] (b) The writing was made at or near the time of the act, condition, or event.  [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

5

In general, the rules regarding admissibility of evidence in administrative per se hearings are "relaxed." (*Lake v. Reed, supra,* 16 Cal.4th at p. 467.) As set forth in Government Code section 11513, subdivision (c) and (d): "(c) The hearing need not be conducted according to technical rules relating to evidence and witnesses. . . . Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. [¶] (d) Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."

**The Administrative Per Se Hearing**

The administrative per se hearing in this matter convened on December 28, 2011, presided over by Hearing Officer Y. Li. It began with Hearing Officer Li introducing the following documents on behalf of the DMV: Officer Mariconi's DS 367 statement executed under penalty of perjury (Exhibit 1); the forensic alcohol report from Central Valley Toxicology (CVT) (Exhibit 2); a declaration and determination of probable cause for a warrantless arrest, also executed under penalty of perjury by Officer Mariconi (Exhibit 3); Officer Mariconi's four-page arrest report (Exhibit 4); and an October 6, 2011 printout of Patel's driving record (Exhibit 5).[4]

Patel's counsel objected to the admission of the documents on hearsay and lack of foundation grounds. Hearing Officer Li overruled the objections and moved the exhibits into evidence.

Officer Mariconi's DS 367 statement attested as follows: "On 04/02/11 at 0157 hours, I was on patrol driving marked LPD unit 14 eastbound on First St. near Portola Ave. I noticed a silver Scion (CA license 6BAV402) also traveling eastbound in the right (#2) lane. The vehicle caught my attention because it was traveling at about

---

[4] The driving record showed that at the time of his April 2, 2011 arrest, Patel was on probation for reckless driving stemming from a June 10, 2009 arrest for driving under the influence.

6

35 mph, below the posted speed limit of 40 mph.  I watched the vehicle as I [*sic*] drifted to the right, with both right side tires crossing over the solid white line dividing the bicycle lane from the traffic lane (a violation of 21658(a) VC).  The Scion moved back into the traffic lane and continued eastbound.  As the Scion passed Trevarno Rd. the vehicle drifted to the right again, and traveled for about 30 feet with both right side tires on the bicycle lane.  I initialed [*sic*] a traffic enforcement stop on the vehicle for the violation.  The Scion made a right turn onto N. Mines Rd. and stopped on the right side of the roadway.  [¶] I contacted the driver of the Scion, Chirag Patel.  When I was speaking with Patel, I noticed that his eyes were bloodshot, watery and there was an odor of an alcoholic beverage on his breath.  I had Patel perform a series of standardized field sobriety tests (SFSTs) and he consented to a PAS test.  When he performed the SFSTs, Patel showed signs of impairment.  Based on my observations of Patel, his performance on the SFSTs and the results of the PAS test, I believe that he was driving his vehicle while under the influence of alcohol.  I placed him under arrest for a violation 23152(a) VC."

The one-page forensic alcohol report showed that on April 6, 2011, Patel's blood sample was delivered by Tricor, a delivery service, to CVT, where it was received by Bill Posey.  An analysis performed and recorded that same day confirmed a BAC of 0.13 percent.  Analyst supervisor Alan D. Barbour signed the report on April 11, 2011, with the following certification:  "I certify, under penalty of perjury, that this is a true and correct copy of results of the analysis on blood or urine obtained during the regular course of my duties.  I further certify, that I am Department of Health Services approved Forensic Alcohol Supervisor or Forensic Alcohol Analyst and that equipment used for analysis was in proper working order and recording of results was done at the time of analysis using the method specified under California Forensic Alcohol License 04061."

The hearing then shifted to Patel, whose counsel offered the following exhibits, which Hearing Officer Li marked for identification:  a seven-page hearing brief dated July 26, 2011 (Exhibit A); a 18-page packet of documents produced by CVT pursuant to a subpoena served by Patel (Exhibit B); the curriculum vitae of Jeffrey L. Zehnder,

7

laboratory director and founder of Drug Detection Laboratory (DDL) (Exhibit C); a blood analysis report from DDL (Exhibit D); and a revised hearing brief dated December 28, 2011 (Exhibit E).

Following the identification of the documents, Patel put on forensic toxicologist Zehnder, who the hearing officer recognized as an expert.[5] Zehnder testified that DDL had performed an analysis of Patel's blood sample, which showed a BAC of 0.10 percent, compared to CVT's result of 0.13 percent. He also testified that DDL's test indicated a sodium fluoride level of four milligrams per milliliter, which was below the industry standard of 10 milligrams per milliliter. He explained that fluoride is a preservative that reduces the possibility of microbial production of alcohol if microbes are present and also inhibits enzymes that can break alcohol down. It is used, according to Zehnder, to "preserve the integrity of the sample." He confirmed, however, that the level of sodium fluoride in the sample was not a violation of Title 17.[6]

Zehnder also suggested that the results of CVT's analysis were compromised. This was so, he opined, because the baseline of the chromatogram was "hilly" rather than flat, suggesting a problem with the chromotograph. He speculated that it had a dirty injector, a column that was "getting a little long in the tooth," or "garbage in the blood." He explained that DDL's analysis was performed using the "head space" method, which he claimed eliminated the possibility of contamination. He acknowledged, however, that

---

[5] Zehnder had a bachelor's degree in forensic science, with a chemistry teaching minor. He had worked as a forensic toxicologist for over 36 years. He had qualified as an expert in more than 2,000 cases regarding forensic toxicology, alcohol and drug testing, alcohol metabolism, and the effects of alcohol and drugs on psychomotor function skills in state and federal courts throughout California and Nevada, and he had testified in more than 2,000 in administrative per se hearings.

[6] "Title 17 establishes procedures for determining 'the concentration of ethyl alcohol in samples of blood, breath, urine, or tissue of persons involved in traffic accidents or traffic violations.' " (*Hernandez v. Gutierrez* (2003) 114 Cal.App.4th 168, 172, quoting Cal. Code Regs., tit. 17, § 1215.1, subd. (b); see also *Imachi v. Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 816.)

CVT's maintenance log indicated that CVT replaced the injector, injection port liner, and septum once a week.

Patel's counsel then turned to a retest CVT performed on April 16, which showed a BAC of less than 0.13. According to Zehnder, the drop in BAC from CVT's first analysis to its second and to DDL's test could indicate problems with CVT's initial analysis. He admitted, however, that the variances could also have been due to storage techniques or oxidation that occurred each time the sample was opened to perform a test.

Following Zehnder's testimony, the hearing officer moved two of Patel's exhibits—the documents CVT produced in response to Patel's subpoena and DDL's laboratory report—into evidence. Patel's counsel then gave his closing argument.

On January 13, 2012, Hearing Officer Li issued his "Administrative Per Se— .08 BAC Notification of Findings and Decision." He found that Officer Mariconi had probable cause to stop Patel, and Patel had displayed objective symptoms of intoxication including bloodshot and watery eyes, the odor of alcoholic beverage, unsatisfactory field sobriety tests, PAS results indicating intoxication, and an admission of alcohol consumption. He further found that Officer Mariconi had reasonable cause to believe that Patel was driving under the influence of alcohol and the arrest was lawful. Finally, concluding that there was a "lack of sufficient evidence to rebut the chemical test results," he found that Patel had a BAC of 0.13 percent.

Hearing Officer Li rejected the arguments Patel's counsel had presented during his closing argument. As to a contention that the blood analysis performed by CVT was unreliable because the chromatograph's "dirty baseline" suggested contamination of the sample, the hearing officer concluded that Zehnder's testimony in that regard went "towards the weight of the evidence . . . ." He found that the preponderance of the evidence indicated that Patel was driving with a 0.08 percent BAC or greater, citing DDL's own forensic alcohol report showing a BAC of 0.10 percent. Hearing Officer Li also rejected the suggestion that the varying BAC results indicated unreliability in the testing, citing Zehnder's testimony that it may instead have been due to oxidation that occurred each time the sample was opened.

9

Addressing a contention by Patel that there was no evidence the blood draw was conducted in a medically approved manner, Hearing Officer Li determined "DMV Exhibit 4 indicates [Patel's] blood was drawn by a Certified Phlebotomy Technician. In the absence of evidence to indicate the blood was not drawn in an approved manner, [Patel's] contention is found without merit." He likewise rejected Patel's contention that there was an insufficient amount of sodium fluoride in the sample, citing Zehnder's testimony that the amount of preservative complied with Title 17, and that his arrest was unlawful because there was no evidence that the bike lane into which he weaved was lawfully established.

The findings concluded with the decision to re-impose the suspension of Patel's driver's license.

**The Petition for Administrative Mandate**

On February 14, 2012, Patel filed a petition for writ of administrative mandate, seeking to set aside the suspension. The petition fundamentally argued that the evidence showed Patel was lawfully driving his car at the time he was stopped and Officer Mariconi did not observe him commit a crime or infraction. The petition also argued that the DMV failed to lay a proper evidentiary foundation establishing the reliability of the blood-alcohol test. Finally, it argued that the hearing violated Patel's due process rights because Hearing Officer Li both presented the evidence at the hearing and ruled upon its admissibility.

The DMV's opposition argued that Officer Mariconi had reasonable cause to believe that Patel was driving under the influence; he lawfully initiated the traffic stop leading to Patel's arrest; the DMV's documentary evidence was entitled to the official duty presumption under section 664 and supported the hearing officer's findings; and Patel was afforded due process.

The matter came on for hearing on May 24, 2012. Patel began by reiterating the same issues raised in closing argument at the administrative per se hearing and in the petition for writ of mandate. Namely, he contended that he had been deprived of due process because Hearing Officer Li served as both prosecutor and judge; that the blood

10

analysis was inaccurate because, as his expert Zehnder had testified, there were contaminants in the sample; and that his stop was unlawful because there was no foundational evidence establishing that the bicycle lane into which he swerved complied with the Streets and Highways Code. For the first time, Patel also argued that the integrity of the blood sample was compromised because the chain of custody evidence was inadequate and that the CVT forensic alcohol report was inadmissible because it was not made at or near the time of the analysis, as required by section 1280.

By order dated June 26, 2012, the trial court granted Patel's petition. It observed that the DMV bore the initial burden of establishing that a driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher, a burden, the court noted, typically satisfied by the arresting officer's DS 367 statement and a forensic laboratory report documenting the results of the driver's blood test. Based on these documents, the hearing officer had found that the DMV met its burden of showing that Patel was driving with a BAC of 0.13 percent, and that Patel failed to present sufficient evidence to rebut the chemical test results. Exercising its independent judgment, however, the trial court found "that there was not substantial evidence to support the hearing officer's findings in light of the record as a whole."

As pertinent here, the trial court's order stated:

"The court finds there is insufficient evidence in the record to support a chain of custody as to the blood samples taken from [Patel] such that the court can find that the integrity of the blood sample was maintained. 'In most cases it will be the arresting officer who will . . . either give the test or take the suspect to a facility where a test can be administered.' [Citation.] Even if the test is administered by another officer, the arresting officer still has a duty to make certain that the testing procedures satisfy statutory and regulatory requirements. [Citation.] Arresting Officer Marconi here completed both the DS 367 report and Arrest Report. [Citation.] It was Officer Oto though, that transported [Patel] to Santa Rita Jail for his blood draw, which was taken at 2:50 a.m. on April 2, 2011, and Officer Oto that then took the vials from Certified Phlebotomy Technician Adriana Hamm. [Citation.] Officer Mariconi's April 2, 2011

11

report states that 'Technician Hamm turned the vials over to Officer Oto who later placed them into the toxicology safe for lab testing.' [Citation.] Thus, Officer Mariconi was neither present at the blood draw nor does it appear he was ever in possession of the vials. The record is also absent as to whether Officer Oto then forwarded the vials from the toxicology safe to CVT for testing. [Citation.] The record only shows that the vials were delivered by Tricor to CVT on April 6, 2011, which is 4 days after the blood samples were taken. [Citation.] Given Officer Mariconi's lack of personal knowledge combined with this lack of evidence regarding maintaining the integrity of the blood samples, the court cannot find that there is an evidentiary presumption that applies to the handling of the blood samples.

"In addition to the above issue, the forensic alcohol report likewise appears to be unreliable. A blood test performed by a licensed forensic laboratory on behalf of a law enforcement agency is also admissible based on the public employee records exception to the hearsay rule. [Citation.] A forensic alcohol report is admissible at an administrative hearing however, only 'if it complies with the requirements governing the admission of evidence.' [Citation.] Such admissibility is found where the test results were put into evidence through the certified laboratory report of the alcohol analyst who personally performed the test. [Citation.] The requisite indicia of trustworthiness is based on the fact that the analyst was reporting firsthand observations as well as by the presumption of official duty regularly performed. [Citation.] Where blood test results were not reported by the analyst but by the arresting officer that merely attested that he reviewed the results, that part of the officer's report regarding the result of the blood-alcohol test—the sole proof of the licensee's blood-alcohol content—was found to be inadmissible hearsay. [Citation.]

"The blood test results in this case were not placed into evidence through the certified laboratory report of the analyst that performed the test. The record shows that the laboratory testing was done by an unidentified analyst with the initials 'JEC' on April 6, 2011. [Citation.] The results were then certified by Analyst Supervisor Alan D. Barbour ('Barbour') on April 11, 2011. [Citation.] Mr. Barbour certifies the results

under penalty of perjury, stating that the results were obtained during the regular course of his duties and that the equipment used for analysis was in proper working order and recording of results was done at the time of analysis.  [Citation.]

"It is unclear how Mr. Barbour can certify that the equipment was proper and the recordings were done at the time of analysis, when the testing was done by 'JEC' and not Mr. Barbour himself.  This lack of foundation is further compounded by the fact that the records shows [*sic*] the results were certified on April 11, 2011, 5 days after the testing was done.  It would appear to the court that this testing was therefore not performed in Mr. Barbour's regular course of duties, nor can it be said that the certified laboratory results were prepared at or near the time of testing, such that the evidentiary presumption should apply.  The court also finds that based on its independent review of the record, there was sufficient evidence to rebut that the presumption under Evidence Code sections 664 and 1280 apply [*sic*] to the laboratory results, and therefore the hearing officer should have shifted the burden back to the DMV to establish the admissibility of these reports."

The trial court remanded the matter to the DMV to set aside its findings and decision and "for reconsideration of this case in light of the court's opinion, and further hearing consistent with this order, if necessary."

Judgment was entered on July 31, 2012, and the DMV timely appealed.

### DISCUSSION

**Standard of Review**

The rules that pertain are well settled, as confirmed in the leading case of *Lake v. Reed, supra,* 16 Cal.4th 448.  First, as to the rules governing the trial court, "In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, ' "whether the weight of the evidence supported the administrative decision." ' " (*Id.* at p. 456.)  But even with that independent judgment, "the trial court still 'must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the

13

administrative findings are contrary to the weight of the evidence.' " (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at p. 1233, quoting *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

As to the rules governing us, *Lake v. Reed, supra,* 16 Cal.4th 448 further confirms that "[o]n appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citations.] ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" ' [Citation.]" (*Id.* at p. 457; accord, *Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1184.)

We review the trial court's evidentiary rulings for abuse of discretion. (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986 (*Molenda*).) " '[T]he appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' [Citation.] Appellate courts will disturb discretionary trial court rulings only upon a showing of a clear case of abuse and a miscarriage of justice." (*Ibid*.)

### The Trial Court's Finding That the DMV Failed to Satisfy Its Initial Burden of Proof Is Unsupported By Substantial Evidence.

As noted above, at the administrative per se hearing, the DMV's burden was threefold. It was required to demonstrate that: (1) Officer Mariconi had reasonable cause to believe that Patel was driving a vehicle under the influence; (2) Patel was lawfully arrested; and (3) Patel was driving his car with a blood-alcohol level of 0.08 percent or greater. (*Lake v. Reed, supra,* 16 Cal.4th at pp. 455-456; Veh. Code, § 13557, subd. (b), § 13558, subd. (c)(1).) Where the driver submits to a blood test, as Patel did here, the DMV usually satisfies its burden by introducing two documents: the arresting officer's sworn DS 367 statement and a forensic laboratory report documenting the results of a chemical blood test. (*Petricka, supra,* 89 Cal.App.4th at p. 1348.) The DMV introduced

14

these documents at the hearing over the objection of Patel's counsel. While the trial court expressed no concerns over the hearing officer's decision to admit the DS 367 statement, it found that the laboratory report lacked reliability. Although the court did not expressly put it in these terms, the ruling amounted to an evidentiary determination that the report did not meet the foundational requirements of section 1280 and thus should not have been admitted.

As noted, we review the trial court's evidentiary rulings for abuse of discretion (*Molenda, supra,* 172 Cal.App.4th at p. 986), and we conclude this discretion was abused.

As previously indicated, under section 1280 the forensic alcohol report was admissible if it was made by and within the scope of duty of a public employee, was made at or near the time of the act, condition, or event recorded, and the sources of information and method and time of preparation suggested that it was trustworthy. (§ 1280.) The trial court took exception with the first and second foundational requirements. We address them in turn.

We can easily dispose of the trial court's concern as to the first requirement. The court concluded that the report was not prepared by and within the scope of duty of a public employee because the report was sworn by Analyst Supervisor Barbour, while the analysis was apparently conducted by "JEC." Thus, according to the court, it appeared the "testing was therefore not performed in Mr. Barbour's regular course of duties . . . ." In fact, the report makes no reference to "JEC." The court's speculation that "JEC" conducted the analysis is drawn from records in the packet CVT produced in response to Patel's subpoena. In the forensic alcohol report itself, Barbour attested that he was a "Department of Health Services approved Forensic Alcohol Supervisor or Forensic Alcohol Analyst" and that the results of the analysis were obtained during the regular

15

course of his duties.  The court's speculation regarding "JEC" was insufficient to negate Barbour's certification, and the first foundational requirement was satisfied.[7]

Turning to the second foundational requirement—that the "writing was made at or near the time of the act, condition, or event" recorded—the trial court concluded that the forensic alcohol report did not satisfy this requirement because although the analysis was conducted on April 6, Barbour did not certify the results until April 11, five days later. This conclusion is contrary to applicable case law.

It has been widely recognized that " '[h]ow soon a writing must be made after the act or event is a matter of degree and calls for the exercise of reasonable judgment on the part of the trial judge.' " (*People v. Martinez* (2000) 22 Cal.4th 106, 128, fn. 7, italics omitted.)  As the *Martinez* court went on to explain, "[T]he timeliness requirement 'is not to be judged . . . by arbitrary or artificial time limits, measured by hours or days or even weeks.' [Citation.]  Rather, 'account must be taken of practical considerations,' including 'the nature of the information recorded' and 'the immutable reliability of the sources from which [the information was] drawn.' [Citation.]  'Whether an entry made subsequent to the transaction has been made within a sufficient time to render it within the [hearsay] exception depends upon whether the time span between the transaction and the entry was so great as to suggest a danger of inaccuracy by lapse of memory.' " (*Id.* at p. 128.)  Multiple cases have considered the timeliness requirement in the context of a forensic alcohol analysis, but they do not avail Patel.

In *Downer v. Zolin* (1995) 34 Cal.App.4th 578, disapproved on other grounds in *Lake v. Reed, supra,* 16 Cal.4th 448, 465, 467, footnote 11, a laboratory report of the analysis of a driver's urine sample lacked a signature near the statement of certification, and it was questionable whether the report was dated.  Concluding that the trial court had not erred in finding the report undated, the Court of Appeal held that "[t]he absence of

---

[7] We also note that the trial court misunderstood the requirement to be that the *analysis* was conducted within the scope of Barbour's duties.  In fact, as is clear from the language of section 1280, the requirement is that "[t]he *writing* was made by and within the scope of duty of a public employee." (Italics added.)

16

evidence showing the report was made at or near the time of the reported event" rendered it inadmissible hearsay under section 1280. (*Downer v. Zolin, supra,* 34 Cal.App.4th at p. 582.) In dictum, and as relevant here, the court went on to state that "a report prepared nearly a week after the forensic tests were completed does not fall within the statutory requirement that the report be prepared 'at or near the time' of the reported event." (*Id.* at p. 582, fn. 5.)

In *Glatman v. Valverde* (2006) 146 Cal.App.4th 700, a motorist suspected of driving under the influence had his blood drawn just after midnight on July 25, 2005. That same day, a forensic analyst analyzed the sample. The sample was then analyzed again the next day by a different analyst. The two analysts certified the test results on a forensic report dated August 1, one week after the first analysis was conducted. (*Glatman v. Valverde, supra,* 146 Cal.App.4th at p. 703.) At the administrative hearing, the hearing officer rejected the driver's argument that the report was inadmissible because the test results were not recorded at or near the time of the blood analysis. (*Ibid.*)

The driver petitioned the superior court for a writ of mandate. (*Glatman v. Valverde, supra,* 146 Cal.App.4th at p. 703.) The court held that the forensic report did not satisfy Evidence Code section 1280's second foundational requirement and was thus inadmissible. After also rejecting the officer's report of the driver's PAS results, the court granted the petition and issued a writ commanding the DMV to set aside the license suspension. (*Ibid.*)

On the DMV's appeal, the Court of Appeal affirmed. It held that the trial court did not abuse its discretion in finding that the forensic report was not made "at or [near] the time of the event," since it was prepared a week after the analysis was performed. (*Glatman v. Valverde, supra,* 146 Cal.App.4th at p. 704.) Citing *People v. Martinez, supra,* 22 Cal.4th at p. 128, the court stated that the case presented a " 'danger of inaccuracy by lapse of memory.' " (*Ibid.*) It rejected the DMV's argument that given the number of tests performed each day, it was unreasonable to infer that the analyst attempted to memorize the results and then record them from memory a week later. According to the DMV, the only reasonable inference was that the laboratory had policies

and procedures in place to ensure that the results were recorded when the analysis was conducted. (*Id.* at pp. 704-705.) The court disagreed, stating, "[A]n inference may be drawn only if the 'proposed conclusion is a reasonable, logical, and nonspeculative deduction from the facts proved.' [Citation.] Here, the record is silent as to the department's recordation policies and procedures, an automatic recording capability of the testing equipment used, and the average number of tests performed by an analyst each day." (*Id.* at p. 705.)

In *Molenda, supra,* 172 Cal.App.4th at pp. 982-983, late on the evening of August 17, 2006, a car was involved in a single-vehicle rollover accident. The responding officers determined the driver was under the influence of alcohol and arrested her. Shortly after midnight on August 18, she submitted to a blood test. (*Id.* at p. 983.) The laboratory received the blood sample on August 21, completed its analysis on September 1, and recorded the results in a report dated September 8. (*Ibid.*)

In the administrative per se hearing, the driver objected to the admissibility of the toxicology report, complaining that it did not meet the foundational requirements of section 1280 because it was not prepared "at or near the time" of the reported event. (*Molenda, supra,* 172 Cal.App.4th at p. 984.) The hearing officer disagreed, finding that " 'seven days is at or near the time of analysis' " and upholding the license suspension. (*Id.* at pp. 984-985.)

The driver filed a petition for writ of mandate to set aside the suspension. (*Molenda, supra,* 172 Cal.App.4th at p. 985.) The superior court granted the petition, holding that the delay in preparing the toxicology report rendered the report inadmissible. (*Ibid.*) The Court of Appeal affirmed. (*Molenda, supra,* 172 Cal.App.4th at p. 982.) It stated that, as in *Glatman v. Valverde, supra,* 146 Cal.App.4th 700, there was no evidence the test result was recorded prior to the preparation of the written report, which was done one week after the analysis. As such, there was no evidence it was prepared at or near the time of the recorded event, and the trial court was within its discretion to exclude it. (*Id*. at p. 991.)

18

These cases instruct that while there is no fixed number of days that constitutes "at or near the time of analysis," seven days does not satisfy the requirement where there are no indicia that the test results were recorded contemporaneously with the analysis and later transferred to a sworn report. But in this case, the time lapse between the April 6 analysis and the April 11 report was only five days. We are aware of no authority—and Patel cites none—finding that a lapse of five days under any given circumstances defeats the "at or near the time of analysis" requirement of section 1280.

More significantly, the evidence before Hearing Officer Li established that there was no "danger of inaccuracy by lapse of memory." The CVT report itself stated that the ethyl alcohol analysis was "performed and *recorded* on: 04/06/11." (Italics added.) The packet of CVT documents Patel introduced further confirmed that the data was contemporaneously recorded with the analysis. Among these records were two worksheets, for lack of a better word, that recorded the data generated by Patel's blood analysis. They were dated April 6 and time-stamped 10:58:27 a.m. and 11:04:10 a.m.— just minutes after the analysis was commenced at 10:54:25 a.m. and 11:00:08 a.m., respectively. Likewise, another document entitled "Forensic Alcohol Log," also dated April 6, reported data from the worksheets and identified Patel's BAC of 0.13 percent. It thus cannot be said that there was a "danger of inaccuracy from memory lapse" when the results were recorded within minutes of the tests being conducted.

In light of the foregoing, we conclude that the forensic alcohol report satisfied section 1280's foundational requirements and was thus admissible. It was an abuse of discretion for the trial court to have concluded otherwise.

The forensic alcohol report and Officer Mariconi's DS 367 statement together established that the officer had reasonable cause to believe Patel was driving under the influence, Patel was properly arrested, and he had a BAC of 0.13 percent. Based on section 664, then, the DMV was entitled to a presumption that the blood test results were obtained in compliance with the regulations and guidelines of Title 17. (*Shannon v. Gourley, supra,* 103 Cal.App.4th 60, 64.) This shifted the burden to Patel to introduce evidence establishing otherwise.

19

**Patel Failed to Introduce Sufficient Evidence Rebutting the DMV's Prima Facie Case**

While the trial court primarily held that the DMV did not satisfy its initial burden of proof and was thus not entitled to the section 664 presumption, it held, in the alternative, that even if the DMV satisfied its initial burden, thereby shifting the burden to Patel, "there was sufficient evidence to rebut that the presumption under Evidence Code section 664 and 1280 apply to the laboratory results, and therefore the hearing officer should have shifted the burden back to the DMV to establish the admissibility of these reports." Again, this conclusion is unsupported by substantial evidence.

First, the trial court found that the forensic alcohol report was unreliable. Aside from the timing issues—which we have already rejected—the court was concerned that someone with the initials "JEC" apparently conducted the analysis, while forensic alcohol supervisor Barbour certified the report.[8] It thus found it "unclear how Mr. Barbour can certify that the equipment was proper and the recordings were done at the time of the analysis, when the testing was done by 'JEC' and not by Mr. Barbour himself." The flaw in this argument, however, is that it is founded on mere speculation because Patel made no effort to develop this evidence at the hearing. The CVT worksheets identified the "Acq. Operator" as "JEC," but we do not know the significance of this notation. Patel did not subpoena "JEC" or Barbour to testify at the hearing. He elicited no evidence or testimony regarding the respective roles of "JEC" or Barbour in conducting the forensic analysis. And based on the CVT records, it is possible that Barbour had personal knowledge of all that he certified.

Furthermore, even assuming arguendo there was evidence establishing that "JEC" conducted the analysis, such evidence would not automatically render the report unreliable. Citing *Petricka, supra,* 89 Cal.App.4th at p. 1351, the trial court was apparently under the mistaken belief that the forensic alcohol report could only be

---

[8] Title 17 defines a "Forensic Alcohol Supervisor" as "a person employed by a forensic alcohol laboratory who can be responsible for all aspects of the performance of forensic alcohol analysis and for the supervision of personnel who perform such analysis." (Cal. Code Regs., tit. 17, §§ 1215.1, subd. (f).)

certified by the analyst who personally performed the test. But that is not what *Petricka* held, and we are aware of no other authority so holding. If supervisor Barbour had personal knowledge of what he was certifying—e.g., that in supervising "JEC," he oversaw the analysis, confirmed that the equipment was in proper working order, and supervised the recording of the results—we can perceive no reason why his certification would be inadequate.[9]

In addition to the reliability concerns with the forensic alcohol report, the trial court concluded the integrity of Patel's blood sample was compromised because there was insufficient evidence showing a chain of custody. It described these concerns as follows: "Arresting Officer Mariconi here completed both the DS 367 report and Arrest Report. [Citation.] It was Officer Oto though, that transported [Patel] to Santa Rita Jail for his blood draw, which was taken at 2:50 a.m. on April 2, 2011, and Officer Oto that then took the vials from Certified Phlebotomy Technician Adriana Hamm. [Citation.] Officer Mariconi's April 2, 2011 report states that 'Technician Hamm turned the vials over to Officer Oto who later placed them into the toxicology safe for lab testing.' [Citation.] Thus, Officer Mariconi was neither present at the blood draw nor does it appear he was ever in possession of the vials. The record is also absent as to whether Officer Oto then forwarded the vials from the toxicology safe to CVT for testing. [Citation.] The record only shows that the vials were delivered by Tricor to CVT on April 6, 2011, which is 4 days after the blood samples were taken. [Citation.] Given Officer Mariconi's lack of personal knowledge combined with this lack of evidence regarding maintaining the integrity of the blood samples, the court cannot find that there is an evidentiary presumption that applies to the handling of the blood samples." The trial court's conclusion that evidence regarding the chain of custody was sufficient to rebut the section 664 presumption was unsupported by substantial evidence.

---

[9] The trial court's concerns with the reliability of CVT's forensic alcohol report were much ado about nothing anyhow, since Patel's own alcohol analysis showed he had a BAC of 0.10 percent.

21

First, as a general matter, deficiencies in chain of custody documentation go to the weight of the proffered evidence, not to the evidence's admissibility. (*People v. Catlin* (2001) 26 Cal.4th 81, 134; *People v. Diaz* (1992) 3 Cal.4th 495, 559.) Here, even assuming arguendo that the chain of custody was inadequately documented, there was no evidence suggesting that Patel's blood sample was compromised. There was no evidence that the vials were unlabeled or improperly labeled and, in fact, the record shows the opposite. There was no suggestion that the vials were tampered with in any way.

Additionally, the trial court's rejection of Officer Mariconi's account of the blood draw and subsequent handling of Patel's blood sample due to his purported lack of personal knowledge was erroneous for two reasons. First, in an administrative per se hearing, there is a "relaxation of evidentiary rules" (*Petricka, supra,* 89 Cal.App.4th at p. 1348), and hearsay evidence is admissible to supplement or explain other evidence. (Gov. Code, § 11513, subd. (d); *Lake v. Reed, supra,* 16 Cal.4th at p. 458.)

Second, the trial court's conclusion that Officer Mariconi lacked personal knowledge was again speculative. From Officer Mariconi's description in his report, it is entirely possible that he was present at the blood draw and when Officer Oto placed the sample in the toxicology safe. Patel could have attempted to show Officer Mariconi's lack of personal knowledge at the hearing by subpoenaing Officers Mariconi or Oto or the phlebotomist, but he made no effort to develop the evidence.

In sum, once the DMV satisfied its initial burden, the burden shifted to Patel to produce evidence demonstrating that the applicable procedures were not properly performed. (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at pp. 1232-1233.) The trial court mistakenly believed that Patel merely had to "raise[] an issue as to the integrity of the blood draw [for] the burden [to] shift[] back to the [DMV] . . . ." He was, however, required to do more than merely "raise an issue," and his showing could not rest on speculation. (*Petricka, supra,* 89 Cal.App.4th at p. 1348.) But this is what his showing did and, for that reason, the trial court's finding that Patel introduced sufficient evidence to shift the burden back to the DMV was unsupported by substantial evidence.

22

### Patel's Arguments in His Respondent's Brief Lack Merit

In his respondent's brief, Patel reiterates the same arguments he made during the administrative per se hearing and in his petition for writ of mandate, none of which the trial court relied on in granting his writ petition. Specifically, he contends that his arrest was unlawful because the DMV did not establish that the bicycle lane was lawfully created, and the DMV failed to lay a foundation that his blood was drawn in compliance with Title 17. Neither the hearing officer nor the trial court based its decision on either of these arguments, and we likewise conclude they lack merit.

Additionally, Patel argues that his due process rights were violated because the hearing officer presented and ruled on the admissibility of the DMV exhibits and because Government Code section 11502 mandates that administrative hearing officers be attorneys with at least five years experience. His cited authority does not support his arguments, however, and we conclude the hearing was conducted in accordance with the established procedures.

## DISPOSITION

We conclude with the observation that, as California's courts and Legislature have long recognized, drunk driving is an extremely dangerous offense. (See *Helmandollar v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 52, 57 ["numerous, dangerous, and deadly risks associated with drinking and driving"]; *Burg v. Municipal Court* (1983) 35 Cal.3d 257, 262 ["The drunk driver cuts a wide swath of death, pain, grief, and untold physical and emotional injury across the roads of California and the nation."]; *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 899["Drunken drivers are extremely dangerous people."]; *People v. Duroncelay* (1957) 48 Cal.2d 766, 772.) Patel does not appear to take these dangers to heart, as the drunk driving arrest spawning this matter was not his first. Despite this, the law would require us to affirm the trial court's decision reinstating Patel's driver's license if the decision was supported by substantial evidence. It was not, and we therefore reverse.

23

The case is remanded to the trial court with directions to enter an order denying Patel's petition for writ of mandate and reinstating the suspension order.  The DMV shall recover its costs on appeal.

_____
Richman, J.

We concur:

_____
Haerle, Acting P.J.

_____
Lambden, J.