Filed 2/18/22  Bracamontes v. Dept. of Motor Vehicles CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ALFREDO BRACAMONTES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>Defendant and Respondent. | D078298<br><br><br><br>(Super. Ct. No.<br> 37-2019-00043754-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

A.P. Zmurkiewicz for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Celine M. Cooper and Vanessa Whang Mott, Deputy Attorneys General, for Defendant and Respondent.

Alfredo Bracamontes appeals from a judgment denying his petition for writ of mandate to set aside an order of the Department of Motor Vehicles (DMV) suspending his driving privileges for four months under Vehicle Code

sections 13353.2 and 13353.3, subdivision (b)(1) for driving a vehicle when he had more than .08 percent by weight of alcohol in his blood.

Bracamontes contends the administrative hearing officer wrongly excluded documents and testimony showing the phlebotomist who drew his blood was not properly evaluated and supervised under the applicable statutes and regulations, including Vehicle Code section 23158 and California Code of Regulations, title 17, section 1215 et seq.; therefore, the Evidence Code section 664 presumption that official duty was regularly performed was rebutted, and his blood test results were inadmissible because they lacked a proper foundation of scientific reliability.

This court's recent decision in *Gerwig v. Gordon* (2021) 61 Cal.App.5th 59 (*Gerwig*) involved similar facts and controls this case. Accordingly, we decline Bracamontes's request to "reject the test or tests enunciated in *Gerwig*."[1] (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 ["Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division."].)

---

[1] In full, Bracamontes argues: "Adoption of the test or tests enunciated in *Gerwig* will, in most if not all cases, require licensees to call experts—physicians, registered nurses, licensed clinical bioanalysts, or licensed clinical scientists—*at DMV hearings* to review and opine on, as the *Gerwig* court put it, 'errors of practice or procedure by the officer or the phlebotomist with respect to the collection' of blood samples. [Citation.] It will require licensees to call laboratory experts to review and opine on 'errors of practice or procedure . . . with respect to the [laboratory] testing' of blood samples. [Citation.] The burden thus imposed on licensees will require 'the marshalling of complex scientific evidence,' . . . and will substantially 'increase the risk of an erroneous deprivation' of a driver's license, a right that has been described as an 'important right to every person who has obtained such a license,' the suspension or revocation of which 'may have profound and obvious effects' on a person's 'life situation.' "

FACTUAL AND PROCEDURAL BACKGROUND

Shortly after midnight on April 22, 2019, a California Highway Patrol officer observed Bracamontes weaving in and out of freeway traffic lanes and varying his driving speed. The officer initiated a traffic stop and observed that Bracamontes showed "obvious signs and symptoms of intoxication" based on his slurred speech, odor of alcohol, and red and watery eyes. The officer saw two light beers in the vehicle's cup holders. Bracamontes admitted he had consumed three beers before driving.

The officer conducted field sobriety tests, and concluded Bracamontes's poor test results were "consistent with a person being under the influence of an alcoholic beverage." On preliminary breath tests, Bracamontes's blood alcohol content (BAC) registered 0.191 percent at 12:27 a.m. and 0.189 percent at 12:29 a.m. Based on the above information, the officer arrested Bracamontes for driving under the influence of alcohol in violation of Vehicle Code section 23152.

Specimen Specialists of America Inc. (SSI), a company that contracts with the San Diego County Sheriff's Department, sent a certified phlebotomy technician, to draw Bracamontes's blood at the San Diego County jail. At 1:38 a.m., his BAC was 0.189 percent.

The administrative hearing officer admitted into evidence, over Bracamontes's objections, official records relating to Bracamontes's driving, arrest, and BAC, including the officer's sworn statement and arrest report, Bracamontes's driving record, and the toxicology report.

Claiming the phlebotomist was unsupervised by SSI, Bracamontes sought to introduce into evidence three subpoenas he had issued to SSI, documents responsive to the subpoenas, and the testimony of some SSI personnel. His counsel argued the evidence and testimony would "all go to

3

establishing that the requirements of Vehicle Code section 23158, which go to the drawing, collection and handling of the blood sample . . . [were] violated in a number of respects" regarding "the foundation for admissibility of the blood test results." The hearing officer declined to admit those records or permit the testimony on timeliness and relevancy grounds.

The hearing officer upheld Bracamontes's license suspension, finding probable cause existed to determine he was driving a motor vehicle under the influence of alcohol, he was lawfully arrested, and he drove with a BAC in excess of 0.08 percent. She rejected Bracamontes's arguments that the blood test results were inadmissible because of statutory and regulatory violations regarding the phlebotomist's supervision.

Bracamontes filed a petition for writ of mandate in the superior court, arguing the excluded documents and testimony would have established violations of statutes and regulations relating to the drawing, collecting, handling, and testing of his blood, and rebutted the Evidence Code section 664 presumption. Bracamontes argued that without the blood test results, the hearing officer's determination that he was driving a motor vehicle when he had a BAC of 0.08 percent or more would be unsupported by the record evidence.

The trial court denied the writ petition on grounds the administrative record contained significant evidence supporting the license revocation and thus the weight of the evidence established Bracamontes was driving under the influence of alcohol. The court added that even if the proffered evidence and testimony had been admitted, they would affect only the weight of the blood test evidence, not its overall admissibility. Further, Bracamontes did not introduce any evidence creating a reasonable inference that the blood test

4

was scientifically unreliable, or that the blood sample was improperly collected or handled.

## DISCUSSION

In *Gerwig*, the appellant had demonstrated through an SSI employee's testimony, that certain SSI procedures were out of compliance with state regulations governing blood test procedures. In particular, the phlebotomist was functionally unsupervised and the manual that SSI provided for phlebotomists had not been approved by a physician and surgeon. The hearing officer agreed there were regulatory violations, but still relied on the laboratory report to conclude appellant drove with a BAC at or above 0.08 percent. On writ review, although the trial court agreed there were statutory violations, it denied appellant relief because " '[t]here was no argument here whatsoever that the test in this case was unreliable; that the machine it tested was unreliable; that the vials that were used were unreliable. Nothing.' " (*Gerwig, supra,* 61 Cal.App.5th at p. 64.)

In *Gerwig*, we specifically addressed the issue presented here: whether *any* violation of the regulations governing blood tests is enough to rebut the Evidence Code section 664 presumption.[2] (*Gerwig, supra,* 61 Cal.App.5th at p. 66.) We concluded: "While an unsupervised phlebotomist could make a mistake, so too could a properly supervised one. There is nothing here to suggest a mistake was made, nor is there any indication that the particular circumstance of [appellant's] blood draw presented a problem the lackluster

---

[2]    In this context, the Evidence Code section 664 presumption " ' "creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of [California Code of Regulations, title 17, section 1219.1] [and] recorded test results are presumptively valid [such that] the DMV is not required to present additional foundational evidence." ' " (*Gerwig, supra,* 61 Cal.App.5th at p. 66.)

supervision structure at SSI left [the phlebotomist] ill equipped to address." (*Gerwig, supra,* 61 Cal.App.5th at p. 71.)  We held:  "In line with the general principle that the licensee's attempt to rebut the Evidence Code presumption ' "cannot rest on speculation," ' . . . showing *any* violation of [California Code of Regulations, title 17, section 1219.1] is not sufficient in and of itself.  [Citations.]  The licensee must present some evidence that the demonstrated violation gives rise to a reasonable inference that the test results are unreliable."  (*Gerwig,* at p. 72.)

Here, we conclude substantial evidence supported the conclusion that Bracamontes drove with a BAC of 0.08 percent or greater.  Specifically, the DMV met its initial burden of establishing that Bracamontes's BAC was 0.08 percent or more by submitting the officer's reports documenting the results of his breath analysis and field sobriety tests, and the certified lab report of the blood alcohol test.  (*Gerwig, supra,* 61 Cal.App.5th at p. 65; accord, *Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1350.)  Bracamontes concedes the DMV may meet its burden of proving by a preponderance of the evidence that he had a BAC of 0.08 percent or more by merely submitting the sworn statement of the arresting officer and the results of a chemical test of the driver's blood.  (*Gerwig, supra,* 61 Cal.App.5th at p. 65 ["Although the DMV bears the burden of proof, it can usually prove up a prima facie case with relative ease when a blood sample was taken from the licensee by submitting two documents: 'the sworn statement of the arresting officer and a forensic lab report documenting the results of a chemical test of the driver's blood.' "].)

Bracamontes failed to rebut the Evidence Code section 664 presumption as he did not present any evidence that the phlebotomist was not licensed or improperly drew his blood.  He also did not produce any

evidence indicating that the regional laboratory did not properly analyze his blood sample. The phlebotomist here was licensed, and no evidence showed that she erred in taking Bracamontes's blood sample. (*Gerwig*, *supra*, 61 Cal.App.5th at pp. 68-69, 72.)

Even assuming the hearing officer erred in not admitting the evidence and testimony Bracamontes proffered, the trial court did not err in ruling that the SSI evidence would not change the outcome of the administrative hearing. As we concluded in *Gerwig,* the fact that a phlebotomist is "functionally unsupervised" is "too tenuous to cast doubt on the reliability of the blood test results." (*Gerwig, supra*, 61 Cal.App.5th at p. 69.)

## DISPOSITION

The judgment is affirmed. Bracamontes is to bear costs on appeal.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.

IRION, J.

7