Filed 9/4/25  Cox v. Gordon CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TYSON COX,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STEVE GORDON, as Director of Department of Motor Vehicles, etc.,<br><br>    Defendant and Respondent. | D083386<br><br>(Super. Ct. No. 37-2022-00019500-CU-JR-CTL)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on August 8, 2025, be modified as follows:

1.    On page 2, in the second to last sentence of the first full paragraph, the word "discovery" is deleted and replaced with "subpoena."

2.    On page 5, in the first full paragraph beginning with "On December 10, 2021," both instances of the word "discovery" are deleted and replaced with "subpoenaed documents."

There is no change in judgment.

The petition for rehearing is denied.

DATO, Acting P. J.

Copies to: All parties

Filed 8/8/25  Cox v. Gordon CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TYSON COX, | D083386 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00019500-CU-JR-CTL) |
| STEVE GORDON, as Director of Department of Motor Vehicles, etc., | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of San Diego County, Gregory Pollack, Judge.  Affirmed.

A. P. Zmurkiewicz for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Jodi L. Cleesattle and Julianne Kelly Horner, Deputy Attorneys General, for Defendant and Respondent.

INTRODUCTION

Tyson Cox was arrested for driving with a blood alcohol level of 0.08 percent or more.  The Department of Motor Vehicles (DMV) suspended his

right to drive pursuant to Vehicle Code[1] section 13353.2. After an administrative per se (APS) hearing, the DMV upheld the suspension. Cox then petitioned the trial court for a writ of mandate directing the DMV to rescind the order suspending his driving privileges. Cox prevailed in the writ proceedings, but the court declined to award him attorney fees.

Cox contends the trial court was required to award attorney fees pursuant to Government Code section 800 because the DMV hearing officer acted arbitrarily and capriciously when she refused to direct the San Diego County Sheriff's Department Regional Crime Laboratory (Sheriff's Department) to produce certain documents pursuant to a subpoena that had been served by Cox before the APS hearing. We disagree. The Sheriff's Department objected to Cox's request for the documents months before the hearing. Cox nevertheless delayed seeking enforcement of the subpoena until the day of the hearing after the proceedings were well underway. We conclude the hearing officer acted neither arbitrarily nor capriciously when she declined to address Cox's discovery issue in the middle of the defense case. Consequently, he is not entitled to attorney fees and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Arrest for Driving Under the Influence of Alcohol*

In August 2021, at about 20 minutes before midnight, Officer Tyler Hubka saw a gray BMW traveling the wrong way down a one-way street in Carlsbad. The road "was marked by a one-way sign on [its] south end" and "several north-pointing arrows painted on the roadway." In addition, "every entrance" to the street "had appropriate no right turn signs, 'Do Not

---

[1]   Undesignated statutory references are to the Vehicle Code.

Enter/Wrong Way' signs, and 'Left Turn Only' signs posted to give drivers notice of the one-way designation." Cox, later identified as the driver of the BMW, turned left onto Grand Avenue and continued to drive in the wrong direction "on the left side of the upraised center median." Hubka conducted a traffic stop.

Cox told Officer Hubka he drank "three beers." His speech was "slurred." His eyes were "red and watery." When he stepped out of the car, his walk was "staggered." Hubka "smelled the odor of an alcoholic beverage coming from [Cox's] exhaled breath," and he conducted a "series of standardized field sobriety tests." Overall, Cox performed poorly.

During the horizontal gaze nystagmus test, Cox could not smoothly track Officer Hubka's pen and his "balance was highly wobbly." "[H]e swayed around in circles during this test." During the walk and turn test, when instructed to stand still on the line with his heel touching his toe, "Cox was not able to maintain his balance as instructed" and he "stepped off the line four times." During the rest of the test, his turns were "OK," but he was unable to walk in a straight line. He failed to walk heel-to-toe 11 times, stepped off the line 15 times, did not count aloud as instructed, and also took the wrong number of steps before turning around. Cox refused to perform the one-leg stand test even though Hubka explained the refusal would be used against him in court to show consciousness of guilt.

Officer Hubka arrested Cox for violations of driving under the influence of alcohol and driving with a blood alcohol content (BAC) above 0.08 percent in violation of sections 23152, subdivision (a), and 23152, subdivision (b). The arrest took place at approximately one minute past midnight.

Following the arrest, Officer Hubka used an Intox EC/IR breath machine (breathalyzer) to collect two breath samples from Cox. The first

3

sample, taken at 12:41 a.m., measured a BAC of 0.220 percent. The second sample, taken three minutes later, measured a BAC of 0.231 percent. This is more than three times the legal limit of 0.08 percent. (§ 23152, subd. (b).)

Officer Hubka completed a form statement recording the results. In it, he certified under penalty of perjury that the "breath test sample results were obtained in the regular course of [his] duties," he was "qualified to operate th[e] equipment," and "the test was administered pursuant to the requirements of Title 17 of the California Code of Regulations." (Italics omitted.)

Officer Hubka completed and gave Cox a DMV order that stated: "You are hereby notified that your privilege to operate a motor vehicle will be suspended or revoked effective 30 days from the issue date of this order. [¶] . . . [¶] This action is taken under the authority of . . . [section] 13353.2 . . . because you were arrested . . . for driving under the influence of alcohol and [¶] . . . [¶] [y]ou completed a breath test with 0.08% BAC or more."[2]

## II.

### *Subpoena to the Sheriff's Department*

Cox asserted his right to an APS hearing. (§§ 13558, subd. (a), 14100, subd. (a).) The DMV set the hearing for December 13, 2021.

On December 3, 2021, Cox served a subpoena duces tecum on the Sheriff's Department. The subpoena directed the Sheriff's Department to produce its custodian of records to testify at the APS hearing on December 13, 2021. Relevant here, the subpoena also requested the production of all records identifying the "reference sample" of "known alcohol concentration"

---

[2] Cox had an Idaho driver's license, not a California driver's license. His privilege to drive in California was therefore suspended, not his license.

4

that was attached to the breathalyzer used to test Cox's breath on the night of his arrest. It further requested the "certificate or certificates of analysis" for the known alcohol concentration reference sample. Cox subpoenaed the same documents from the Carlsbad Police Department.

On December 10, 2021, one business day before the scheduled hearing, Cox appeared before a DMV hearing officer to review discovery received from the Carlsbad Police Department. The discovery did not include documents relating to the known alcohol concentration reference sample, because, according to an affidavit by the custodian of records, the breathalyzer that was used to test Cox was the property of the San Diego County Sheriff.

Because the Sheriff's Department had not yet responded to Cox's subpoena, Cox asked for a continuance so he would have an opportunity to review responsive documents before the hearing. The hearing officer granted his request and rescheduled the APS hearing for March 18, 2022. In the meantime, the officer stated she would forward to Cox any documents received by the DMV from the Sheriff's Department in response to the subpoena.

On December 14, 2021, the Sheriff Department's custodian of records executed a declaration in response to Cox's subpoena. The declaration stated the Sheriff's Department was producing the "calibration certificate" for the breathalyzer, but it was objecting to the production of other documents. The objection stated, "[t]he Sheriff's Department believes that the remaining records sought in the subpoena are not relevant to the matter before the DMV. The Sheriff's Department has provided the relevant material in this case. The Sheriff's Department does not believe that any additional document production is warranted at this time. Please contact [the department] if you have questions or would like to discuss the matter."

According to its records, the DMV forwarded Cox the documents produced by the Sheriff's Department on December 22, 2021. The documents did not include records identifying the reference sample of known alcohol concentration that was attached to the breathalyzer or the certificate or certificates of analysis for the known alcohol concentration reference sample.

III.

*APS Hearing*

On March 18, 2022, Cox appeared before the same DMV hearing officer who had granted the continuance in December 2021. The purpose of the hearing was to address three issues: (1) whether Officer Hubka had reasonable cause to believe Cox was driving a vehicle while under the influence of alcohol; (2) whether Cox was lawfully arrested; and (3) whether Cox was driving a vehicle while he had a BAC of more than 0.08 percent. (*Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1345 (*Petricka*).)

At the outset of the hearing, Cox informed the hearing officer he received the documents and objection that had been produced by the Sheriff's Department and forwarded to him by the DMV. The hearing officer then made a record of each of the specific documents the DMV had received from the Carlsbad Police Department and the Sheriff's Department. Cox stated he intended to call the custodian of records from the Sheriff's Department, Richard Debevec, as a witness, but he raised no objection at this point in time to the department's response to his subpoena.

The hearing officer commenced the hearing. At the time of the hearing, it was DMV practice for the hearing officer to both advocate on behalf of the agency and act as a fact finder. (See *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 523, 526

6

(*DUI Lawyers*).) On behalf of the DMV, the hearing officer accordingly marked and identified five exhibits: (1) a sworn statement by Officer Hubka, (2) the chemical breath test results from the two tests administered to Cox showing BACs of 0.22 percent and 0.23 percent, (3) an arrest report prepared by Hubka, (4) a DUI evaluation report prepared by Hubka, and (5) Cox's driving record. The hearing officer concluded the DMV's case in chief by saying, "Those are the exhibits on behalf of the [DMV]."

Cox commenced his defense with a direct examination of Debevec, who appeared by videoconference. Debevec testified he was a "supervising criminologist," and was familiar with the laboratory records relating to the forensic biology section of the Sheriff's Department. He was generally familiar with the breathalyzer used to test Cox's breath, but he had "never been trained on . . . the instrument, so technically [he could not] really talk about the testing of the instrument or how it works." He named three "fully trained analysts" who were qualified to testify.[3]

Debevec testified the breathalyzer used to test Cox had "a small tank that [was] attached to the[ ] machine." The tank had a dry gas in it with a known alcohol concentration, which was recorded on a "certificate of analysis" that came with the tank. He confirmed the manufacturer provided the certificate to the Sheriff's Department in either paper or electronic format.

Cox asked Debevec whether the gas in the small tank is referred to by the laboratory as "a standard," and the hearing officer objected on

---

[3]    As noted, Cox's subpoena directed the Sheriff's Department to produce its custodian of records to testify at the APS hearing. It did not request the appearance of Officer Hubka, who administered the breathalyzer test to Cox, or a person competent (or most knowledgeable) to testify about how the breathalyzer worked.

foundational grounds. She asserted Debevec had "indicated that he is not trained on the device and cannot speak to the contents of the testing for that device, so the [DMV's] going to object." Cox responded, "Well, so far, I believe [the witness] indicated that he is sufficiently knowledgeable to answer these questions. I assume that if the witness indicates he doesn't have sufficient knowledge to answer the question he'll say so." The hearing officer overruled the objection (the one she had just herself lodged), and Debevec testified that the Sheriff's Department does refer to the gas in the tank as "a standard."

Cox next asked whether sometimes the Sheriff's Department referred to the gas as a "reference standard." The hearing officer objected, but this time, after some argument with Cox, she prohibited further questions about how the breathalyzer worked. She did so on the ground that Debevec had testified he was only generally familiar with the breathalyzer and was not qualified to testify about "the mechanics and the use and the workings of the device." She did not allow Cox to probe further about the extent of Debevec's knowledge about how the device functioned.

Cox turned next to questions about the Sheriff's Department's response to his subpoena. Debevec confirmed he produced "a calibration certificate" for the breathalyzer, but did not produce "records identifying the reference sample of known alcohol concentration" that was attached to the breathalyzer or "the certificates or certificate of analysis for those reference samples." Cox followed up by asking, "So, the subpoena directed you to produce those two things and you didn't produce either of those two things; is that right?" Debevec responded, "Correct. I produced our standard discovery packet for a breath instrument." He explained, "That's [our laboratory's] standard, a standard discovery packet that the lab provides." He further admitted the Sheriff's Department had the requested records (or had access to them).

8

Based on Debevec's admission, Cox asked the hearing officer to "direct the witness to produce the records that were listed in the subpoena." The hearing officer declined and explained her reasoning: "[Mr. Devebec] testified that the documents that were produced were based on the normal and standard packet in response[ ] to the subpoena[ ] . . . . The [DMV] finds that this information was provided to you in a timely manner, that if the information that you requested for your subpoena was not received it was incumbent upon you to do your due diligence to assert to the agency as to why they are not responding to your subpoena. [¶] Being that you have not done so[,] the [DMV] will not direct Mr. Debevec at this time to produce those documents."

Cox asserted the hearing officer was making an assumption that he did not attempt to obtain the documents from the Sheriff's Department. He stated, "I believe the documentation is critical in terms of determining the accuracy of the test result in this case." He repeated his request for an order directing production of the documents.

The hearing officer declined Cox's request again: "This subpoena was issued on December 3[ ] and the [DMV] in a timely manner forwarded this information to you. If it was deficient, it was incumbent upon you to follow up with the agency as to why or why not they are not compliant with your subpoena. At the time of the hearing, it is not timely."

Cox objected and asserted he had attempted to obtain similar documents in other cases and the Sheriff's Department "consistently" refused to produce them. He asked the hearing officer to "certify the facts to the [s]uperior [c]ourt" so the court could "issue an order to the [Sheriff's Department] to produce the subpoenaed records, not the records they chose to produce, but the subpoenaed records." He further asked for a continuance to

9

call one of the three witnesses that Debevec testified had trained to operate the breathalyzer.  The hearing officer declined both requests and took the matter under submission.

IV.

DUI Lawyers *Decision*

Approximately one month after the hearing, on April 15, 2022, the Court of Appeal, Second District, Division Four, filed its opinion in *DUI Lawyers, supra,* 77 Cal.App.5th 517.  The court held the DMV's statewide "hearing structure violate[d] the California and federal due process rights of drivers by combining the advocacy and adjudicatory roles into a single DMV employee." (*Id.* at p. 530.)  The court explained that, "[a]lthough procedural fairness does not prohibit the combination of the advocacy and adjudicatory functions within a single administrative agency, tasking the same individual with both roles violates the minimum constitutional standards of due process." (*Id.* at p. 532.)  The court accordingly found section 14112, subdivision (b)—the statute that permits a DMV hearing officer to act as both an advocate and adjudicator—to be unconstitutional. (*DUI Lawyers*, at p. 533.)

V.

*DMV Ruling and Petition for Review*

Three days later, on April 18, 2022, the hearing officer issued a decision upholding the suspension of Cox's driving privilege. (§ 13559.)  Relevant here, the hearing officer found Debevec to be a credible witness, and she noted "he provided the normal and standard information packet in response to the received subpoena duces tecum from [Cox]."

Cox petitioned for review to the trial court.  The petition sought a writ of mandate directing the DMV to rescind the order suspending his driving

10

privileges. Section 13559, subdivision (a), authorizes the court to rescind an order of suspension "[i]f the court finds that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination which is not supported by the evidence in the record."

Cox's petition asserted two errors relevant here. First, relying on *DUI Lawyers*, Cox claimed he was denied due process of law under the state and federal constitutions because the hearing officer acted as both advocate and adjudicator at his APS hearing. Second, he claimed the hearing officer erred when she refused to enforce the request in his subpoena for documents relating to the reference sample of known alcohol concentration attached to the breathalyzer used to test Cox's breath.

In support of his second argument, Cox explained the importance, in his view, of the documents he sought in the subpoena. To begin, he summarized a portion of Debevec's testimony: "It is clear from the testimony of Mr. Debevec that, at the time that Mr. Cox's breath was being tested, (1) there was a tank attached to the [breathalyzer], (2) the tank contained a dry gas reference sample with a known alcohol concentration, (3) the laboratory calls this reference sample a 'standard' . . . , and (4) the alcohol concentration was known because the tank came with a certificate of analysis that identified and certified the alcohol concentration of the gas in the tank."

Next, he explained the breathalyzer purportedly tests the reference sample twice when measuring the amount of alcohol in a person's breath, once before and once after the test, before converting the reading to BAC. Using a highlighted image, he showed where the two reference sample tests were documented on the "breath test strip" that recorded the results of Cox's breathalyzer test. Notably, although the breath test strip was entered into

11

evidence as part of an exhibit, there was no testimony at the APS hearing, expert or otherwise, about how the breathalyzer uses the known reference sample.

Finally, Cox explained the California Code of Regulations requires the use of known alcohol reference samples to verify the accuracy of instruments used for breath alcohol testing. In particular, California Code of Regulations, title 17, section 1221.2, subdivision (a)(2), mandates that all instruments used for breath alcohol "shall be checked for accuracy with reference samples which are known water solutions or dry-gasses of alcohol." The regulation further provides, "Such determination of accuracy shall consist, at a minimum, of periodic analysis of a reference sample of known alcohol concentration within accuracy and precision limits of plus or minus 0.010 grams % of the true value; these limits shall be applied to alcohol water concentrations and/or dry-gas reference samples of alcohol from 0.08 to 0.30 grams %. The reference sample shall be provided by a forensic alcohol laboratory. [¶] . . . Such analysis shall be performed automatically on applicable instruments, or manually by an operator . . . , and the results shall be used by a forensic alcohol analyst to determine if the instrument continues to meet the accuracy [requirements]. [¶] . . . For the purposes of such determinations of accuracy, 'periodic' means either a period of time not exceeding 10 days or following the testing of every 150 subjects, whichever comes sooner." (*Id.*, § 1221.2, subd. (a)(2)(A)(i), (B).) In order to ensure the accuracy of all instruments used for breath alcohol testing, law enforcement is required to keep records showing compliance with these directives. (*Id.*, § 1221.2, subd. (a)(6).)

The Attorney General filed a return and memorandum of points and authorities in opposition to Cox's petition, and Cox filed a reply.

12

## VI.

### *Trial Court Decision*

The trial court orally advised the parties of its tentative ruling. After argument, it ruled in favor of Cox. In its written ruling, the court agreed, in light of *DUI Lawyers, supra,* 77 Cal.App.5th 517, that Cox's state and federal constitutional rights to due process were violated because the hearing officer acted as both advocate and adjudicator at his APS hearing. The court ruled this was structural error. The court ordered the DMV to "immediately rescind and set aside its decision suspending [Cox's] right to drive in the State of California." The court took no position as to whether the recission "operated to preclude the DMV, on remand, from proceeding against [Cox] with a constitutionally proper hearing that does not combine the advocacy and adjudicatory roles in a single hearing officer."

The trial court did not address Cox's argument that the hearing officer erred when she refused to direct the Sheriff's Department to produce documents relating to the reference sample of known alcohol concentration attached to the breathalyzer used to test his breath. Cox did not seek a statement of decision[4] or otherwise press for a written ruling on this issue. (See Code Civ. Proc., §§ 632, 657.)

## VII.

### *Motion for Attorney Fees*

This finally brings us to the proceedings and court order Cox has appealed. Cox filed a motion for an award of attorney fees pursuant to Government Code section 800. That code section requires an award of

---

[4] "A hearing on a petition for writ of administrative mandamus is a trial of a question of fact for purposes of Code of Civil Procedure section 632." (*Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1326, fn. 3.)

13

attorney fees "computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500)" to the "complainant" in a civil action to review a ruling in an administrative proceeding. (Gov. Code, § 800, subd. (a).) To be entitled to an award, the complainant must be the prevailing party and must show "the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity." (*Ibid.*) If the complainant makes the required showing, attorney's fees must be awarded; they are not optional. (*Plumbing etc. Employers Council v. Quillin* (1976) 64 Cal.App.3d 215, 225.)

In his motion, Cox argued he was entitled to attorney fees, because the hearing officer's refusal to direct the Sheriff's Department to produce the additional records he had subpoenaed, coupled with the dual role she played as both advocate and adjudicator, was arbitrary and capricious. The Attorney General opposed the motion, asserting the hearing officer did not unconstitutionally engage in advocacy while also acting as an adjudicator and that she "simply collected and developed the evidence." (Boldface omitted.) He further asserted fees were inappropriate because there was a " 'bona fide dispute' " at the time of the hearing as to whether the DMV's practice was permissible.

The trial court ruled Cox was not entitled to attorney fees. Explaining its reasoning, the court first clarified that its ruling on Cox's petition for review had been based solely on the recent holding in *DUI Lawyers*. Based on that decision, the court explained it had found the DMV's practice of "combining both the advocacy and adjudicatory roles in a single hearing officer" to be unconstitutional, entitling Cox to recission and remand on that basis alone. The court explained it "did not find that the actual decision by

14

the hearing officer was arbitrary and capricious, only that such decision had been the product of a proceeding which did not pass constitutional muster from a procedural due process standpoint."

The trial court then addressed, for the first time, whether the hearing officer's "evidentiary rulings, factual findings, or ultimate decision" were arbitrary or capricious. The court concluded they were not.

The trial court found "[t]he overwhelming evidence at the hearing established that Cox's blood alcohol level was 0.08% or more while driving a motor vehicle." It noted that "both the breathalyzer strip and the calibration certificate were admitted into evidence, as was the arresting police officer's sworn statement. Cox had been observed driving the wrong way on a one-way road [and] driving on the wrong side of a divided highway, [he] smelled of alcohol, had slurred speech, a staggered walk, red-watery eyes, [and] horizontal gaze nystagmus, [he] admitted to drinking alcohol, and [he] failed a series of field sobriety tests."

The trial court in addition found the DMV's use of a single employee to advocate and adjudicate on behalf of the agency was not arbitrary or capricious. *DUI Lawyers* was not decided until a month after the hearing was conducted. The court accordingly found there was a bona fide legal dispute at the time of the hearing as to whether a single hearing officer could advocate and adjudicate on behalf of the agency.

Finally, the trial court specifically ruled it did "not believe that the hearing officer's rulings regarding the certificate of analysis were arbitrary and capricious." The court observed there is a presumption pursuant to Evidence Code section 664 that government agencies regularly perform their official duties. And, the court noted, Cox's attorney conceded at oral

15

argument "he had never seen the DMV produce a certificate of analysis, though such is frequently requested."

## DISCUSSION

As the prevailing party in the trial court writ proceedings, Cox contends he was entitled to attorney fees under Government Code section 800. We disagree. To be entitled to fees, Cox was required to show "the award, finding or other determination" of the APS hearing was "the result of arbitrary or capricious action or conduct" by the hearing officer. (Gov. Code, § 800, subd. (a).) He has not met this burden. Our review is for abuse of discretion. (*Doe v. Atkinson* (2023) 96 Cal.App.5th 667, 678.)

"Attorney's fees may not be awarded under [Government Code section] 800 simply because the administrative entity or official's action was erroneous, even if it was clearly erroneous." (*Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 823 [cleaned up].) In this context, "the phrase 'arbitrary or capricious' encompasses conduct not supported by a fair or substantial reason, a stubborn insistence on following unauthorized conduct, or a bad faith legal dispute." (*Halaco Engineering Co. v. South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 [cleaned up].) Here, as noted, the reason given by the hearing officer for declining to direct the Sheriff's Department to produce additional documents was she found Cox's request to be untimely. We see no caprice in this ruling.

The process for enforcing a subpoena in administrative proceedings has the potential to be lengthy and cumbersome. The subpoenaed party may or may not seek a protective order. (Gov. Code, § 11450.30, subd. (a).) If the subpoenaed party fails to seek a protective order and still refuses to produce documents, the driver may ask the DMV to issue a subpoena on his or her behalf. (*Delgado v. Department of Motor Vehicles* (2020) 50 Cal.App.5th 572,

578.) And if the subpoenaed party still refuses to comply, the driver may ask the DMV to certify the facts to superior court for contempt proceedings. (Gov. Code, §§ 11455.10, 11455.20.) DMV hearing officers accordingly have discretion and flexibility to grant hearing continuances to issue and enforce subpoenas when the need arises. (*Delgado,* at p. 578.) Section 11524, subdivision (a), of the Government Code accordingly provides that administrative proceedings may be continued upon a showing of good cause.

Here, Cox subpoenaed the records from the Sheriff's Department for production to the DMV at the beginning of December 2021. Debevec, as custodian of records, executed a declaration authenticating the Sheriff Department's response to Cox's subpoena on December 14, 2021, and sent them to the DMV. The DMV received the documents and, in compliance with Government Code section 11507.6, forwarded them to Cox on December 22, 2021. Cox acknowledged he received the Sherriff Department's objection and that the documents produced did not contain the certificate of analysis of the known reference sample or other related documents. Although the record does not disclose the exact date Cox received the documents, the hearing officer stated she forwarded them in a timely manner, Cox acknowledged he received them before the March 18, 2022, hearing, and there is no evidence in the record of substantial mail delay.

To the extent Cox disagreed with the Sherriff Department's objection and the department's corresponding decision to not seek a protective order, it was incumbent upon him to timely seek to enforce the subpoena and to do so in time to seek a continuance of the hearing if needed. It is true that APS hearings are conducted in a relatively informal manner. (See § 14112, subd. (a); *Petricka, supra,* 89 Cal.App.4th at p. 1348.) And it is true DMV hearing officers are empowered to issue subpoenas after a hearing has

17

commenced and to continue the proceedings pending compliance. (§ 14104.5, subd. (a); see, e.g., *Bussard v. Department of Motor Vehicles* (2008) 164 Cal.App.4th 858, 862, 865 (*Bussard*).) But this does not mean there are no deadlines, and no due diligence is required at all when seeking the production of documents for use at an APS hearing. (Cf. *Monaghan v. Department of Motor Vehicles* (1995) 35 Cal.App.4th 1621, 1625–1626.)

Government Code section 11524, subdivision (b), includes a requirement of reasonable diligence when a party seeks to continue an administrative hearing. It provides: "When seeking a continuance, a party shall apply for the continuance within 10 working days following the time the party discovered or reasonably should have discovered the event or occurrence which establishes the good cause for the continuance. A continuance may be granted for good cause after the 10 working days have lapsed if the party seeking the continuance is not responsible for and has made a good faith effort to prevent the condition or event establishing the good cause." (Gov. Code, § 11524, subd. (b).)

This is not a case where the failure to respond to a subpoena first manifested itself at the hearing. (Compare *Bussard, supra,* 164 Cal.App.4th at p. 865 [finding good cause for a continuance when the need to subpoena a witness was "an unexpected development" at the hearing].) The evidence here is that Cox received the Sheriff Department's objection at least two months before the scheduled hearing date. The objection put him on notice that he would likely need a continuance to enforce the subpoena. Despite this advance notice, he waited until the day of the hearing, and waited until after the DMV's case in chief had concluded, to seek enforcement of the document requests directed at the certificate of analysis of the known alcohol sample. Such enforcement, if successful, would have required a continuance

18

for the documents to be produced and then a second hearing on the merits. It was not arbitrary or capricious of the hearing officer to conclude that counsel had not acted diligently in failing to present the issue to the court until the evidentiary portion of the hearing was complete.

We may have exercised our discretion differently than the hearing officer did here, especially given the relatively informal nature of APS hearings and what appears to be a sincere effort on the part of Cox's attorney to establish a right to verify the Sheriff Department's compliance with California Code of Regulations, title 17, section 1221.2, subdivision (a)(2). But, given the due diligence provisions of Government Code section 11524, subdivision (b), we cannot say it was arbitrary and capricious to find Cox's enforcement attempt untimely. We thus conclude the trial court did not abuse its discretion when it ruled Cox was not entitled to attorney fees.[5]

---

[5] Our ruling is without prejudice to Cox timely pursuing the production of the certificate of analysis and related documents on remand if the DMV chooses to conduct a new APS hearing. (See *Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186, 213.) We take no position on the merits of his request.

## DISPOSITION

The trial court's order denying attorney fees is affirmed.  Costs on appeal are awarded to the DMV.  (Cal. Rules of Court, rule 8.278(a)(2).)


DO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.